IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WADE LUCKETT                                                                                                PLAINTIFF

v.                                       CIVIL NO.        09-5211

MISHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                DEFENDANT

## MEMORANDUM OPINION

**I.    Procedural Background:**

Plaintiff filed his application for disability insurance benefits (DIB) on May 3, 2007, alleging an inability to work since March 14, 2007, due to "vertigo, bradycardia, leukocytosis, hyperlipidemia, and gerd" (Tr. 84-88, 105). The state disability determination service denied Plaintiff's claim initially and on reconsideration (Tr. 40-58). Pursuant to Plaintiff's request, a hearing de novo before an administrative law judge (ALJ) was held on December 29, 2009, at which Plaintiff, represented by counsel, and a vocational expert (VE) appeared and testified (Tr. 8-39). After considering all of the evidence of record, the ALJ rendered a decision on January 9, 2009, finding that Plaintiff was not disabled within the meaning of the Social Security Act (Act) at anytime during the relevant time period (Tr. 42-52). The decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on August 12, 2009 (Tr. 1-3).

Plaintiff was fifty-two years old at the time of the ALJ's decision (Tr. 15, 42-52). Plaintiff has a high school education and past relevant work experience as a dump truck driver,

fabricator/welder, and maintenance mechanic/welder (Tr. 17, 36, 112).

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary."  *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)©.  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve

consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Applicable Facts

On December 2, 2005, the Claimant was diagnosed by the VA Medical Center in Fayetteville, Arkansas with Depressive Disorder. (T.168).

On May 31, 2006, the Claimant was taken to Washington Regional Medical Center due to an apparent suicide attempt. (T.340).  The Plaintiff denied that he was attempting suicide and stated that he and his wife were fighting and he just took and unknown quantity of Valium and Xanax because he just wanted to "sleep".  The Plaintiff was diagnosed with Major Depression (T. 350).

On August 17, 2007 a Psychiatric Review was conducted by Brad Williams who found that the Plaintiff only had Mild Restrictions in Activities of Daily Living, Maintaining Social Functioning and Concentration, Persistence and Pace.  He also found that the Plaintiff had no

Episodes of Decompensation. (T. 320)

On August 23, 2007, the Plaintiff went to the VA for a hernia repair. Jeffrey D. Kellar, M.D., found Plaintiff to be awake, alert, and oriented times 4, with no anxiety or depression, and with good insight and judgment (Tr. 398)

On September 26, 2007, the Claimant met with the Suicide Prevention Coordinator at the VA Medical Center. (T.577). At the appointment, the Claimant "spoke of old regrets, which get stronger as the years pass." (Id.). It was noted that the Claimant refused to "lay aside guilt from things that happened during his childhood, even as early as age 5." (Id.). Throughout that session, the Claimant "was intent on harboring false guilt." (Id.).

On October 23, 2007, the Claimant called the VA Medical Center and was transferred to the suicide line. (T.568). The Claimant admitted to having suicidal thoughts and stated that he was "waiting for the right opportunity." (Id.). The Claimant admitted to having suicidal thoughts and stated that he was "waiting for the right opportunity." (Id.). His plan was vehicular suicide. (Id.).

On October 30, 2007, it was remarked that the Claimant's "suicide ideation appears to be chronic." (T.564).

On December 13, 2007, Plaintiff called R.N. Pay and reported he had stopped all of his medications "cold turkey." R.N. Pay encouraged Plaintiff to go to the ER, but he said no (Tr. 534).

On December 18, 2007, Plaintiff told counselor Dealy Blackshear that his depressive symptoms were worse and he had begun taking some of his medications, but not as many as he was supposed to. Plaintiff declined to go to a clinic or ER. (Tr. 533). Carol Ann Phillips, M.D.,

noted that Plaintiff had been "intermittently non-compliant with his plan of care" (Tr. 531).

On December 27, 2007, Plaintiff saw Dr. Stilwell who noted that Plaintiff informed him that he had cut back to about half on all his meds (T. 526). Dr. Stilwell noted that the Plaintiff's affect is neutral but mood was depressed. He was oriented to person, place and time. (T. 527).

On January 28, 2008, the Plaintiff saw Dr. Stilwell who noted that the Plaintiff had wrecked his car while he and his wife were fighting and he stated that he did not want to take antidepressants any longer. He also was not willing to stop smoking. His affect was flat, and mood depressed but he was oriented as to person, place and time. His thoughts were goal oriented and no evidence of delusions or hallucinations. (T. 514).

On February 13, 2008 he was admitted to the Fayetteville Veterans Administration (VA) Hospital, due to intermittent suicidal thoughts secondary to his financial problems, marital problems, and separation between he and his wife. At the time of admission, Plaintiff admitted that he had not been compliant with his medication. Plaintiff also admitted to abusing Xanax (Tr. 386). At that time, the Claimant conveyed feelings of hopelessness that he may "crash" due to not working, losing jobs because of his anger, poor sleep, and no income. At the time of discharge Plaintiff denied any suicidal or homicidal thought (T.388) but his GAF score was 41. (T. 386).

On February 19, 2008, the Claimant was given a PHQ-9[1] screening at the VA Medical Center. (T. 454). He was given a score of 26 which is suggestive of severe depression. (Id.).

---

[1]The PHQ-9 is the nine item depression scale of the Patient Health Questionnaire. The PHQ-9 is a tool for assisting primary care clinicians in diagnosing depression as well as selecting and monitoring treatment.

On February 21, 2008, Dr. Stillwell noted that Plaintiff seemed "much less depressed," although he was more lethargic. Dr. Stillwell also suspected that Plaintiff's medication usage was still erratic as Plaintiff was not clear about his medication use (Tr. 446).

The Claimant was seen at the VA Medical Center again on February 27, 2008. (T.370). On that date, the counselor noted that "patient presents with the depressed demeanor which has become his hallmark." (Id.). The Claimant was then diagnosed with Posttraumatic Stress Disorder, Depressive Disorder, Anxiety Disorder, Borderline Personality Disorder, and assessed a GAF score of 28. (T.371).

Dr. Stillwell again reported on February 27, 2008, that Plaintiff seemed "much less depressed" (Tr. 436), however the plaintiff did state he was having hallucinations but Dr. Stilwell noted that his description "seems quite histrionic" and he found that there was no evidence of delusions or hallucinations.

On March 6, 2008 Dr. Stilwell noted that the Plaintiff's depression was "chronic (and resistant to treatment) and that his prognosis was poor. (T. 435).

On April 29, 2008, Jetty A. Pay, R.N., reported that Plaintiff wanted assistance getting back to work (Tr. 421).

On June 24, 2008, R.N. Pay noted that Plaintiff had improved social function. R.N. Pay also reported that Plaintiff became "a bit animated" when told of some employment opportunities, but regressed when he found out they were at Wal-Mart (Tr. 412).

On June 24, 2008, the Claimant stated that he was unemployed after rolling a dump truck and that he is still not sleeping well. (T.409). On that date, the Claimant was assessed a GAF of 44. (T. 410).

On August 25, 2008, Plaintiff reported to Dr. Stillwell that he was sleeping well and he was happy with his current medications. He also stated that he "still lives too far away to get a job with CWT". (Tr. 402).

On September 3, 2008 the Plaintiff was seen at Ozark Guidance and Counseling for an initial intake. His GAF score was 45. (T. 372).

On September 18, 2008 the Plaintiff was seen by Donald Defreece, MS, LPC for a counseling session. Plaintiff was complaining that he wanted his concentration back, feeling confused and having random thoughts. (T. 373).

On October 13, 2008 Donald Defreece opined that the Plaintiff had Marked to Extreme limitations in most functions of daily activity. He only had Moderate limitations in understanding, remembering and carrying out short, simple instructions. (T. 641-642).

**IV.    Discussion**:

The issue is whether the ALJ correctly determined that Plaintiff failed to meet his burden of proving an impairment or combination of impairments which met or equaled the criteria of an Appendix 1 Listing (Tr. 47, Finding No. 4).

In order to be presumptively disabled under the Listings, a claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in original) (citing 20 C.F.R. § 416.926(a) (1989)). Listing 12.04, which pertains to affective disorders, provides that "[t]he required level of severity ... is met when the requirements in both [subsections] A and B are satisfied, or when the requirements in [subsection] C are satisfied." FN1 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Brown v. Astrue* 2010 WL 5066039, 1 (C.A.9 (Ariz.

(C.A.9 (Ariz.),2010).

In order for Plaintiff to have met the "B" criteria of Appendix 1 Listing 12.04, he must have demonstrated at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, §12.04(B).

Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis. See §§404.1520a and 416.920a.

The ALJ found that Plaintiff failed to meet his burden of demonstrating functional limitations which met the "B" criteria of Listing 12.04.

**RFC:**

Of particular concern to the court is the RFC assigned by the ALJ. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844

(8th Cir. 2009); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

      The record does not contain any psychological RFC assessment from the Plaintiff's treating psychiatrist.

      On August 17, 2007 a Psychiatric Review was conducted by Brad Williams who found that the Plaintiff only had Mild Restrictions in Activities of Daily Living, Maintaining Social Functioning and Concentration, Persistence and Pace.  He also found that the Plaintiff had no Episodes of Decompensation. (T. 320).  Mr. Williams did not find any of the indicators of Depressive Syndrome. (T.  313).  Mr. Williams did not find indicators of c) sleep disturbance, f) feelings of guilt or worthlessness, g) difficulty concentrating or thinking, h) thoughts of suicide, or )hallucinations, delusions or paranoid thinking.

      The sum of Mr. Williams consultive notes states that "[T]he claimant is 49 years old with 12 years of education.  He has worked as a Fabricator in the recent past.  He alleges physical problems and states he has some limitations due to his physical complaint.  He makes no mental allegation, but noted to have some issues and depression related to his alcohol abuse.  The claimant declined any treatment in his recent VA visit in 06/07.  Not severe mentally".  (T. 322).

The evaluation may have been limited because the Plaintiff had not claimed disability for depression when he filed in May 2007. (T. 105).

Plaintiff had gone to the VA hospital on March 16, 2007 complaining of chronic vertigo. Claiming that he had the problem for 2 years but it had just gotten worse. (T. 280). He explained that he had three attacks while driving his dump truck with the worst one on March 14. (T. 281). The Plaintiff admitted to smoking "pot" but not for a week. (T. 282). The Plaintiff did not complain about depression but it was noted on past medical history with a last reference from August 2002. (T. 283). Plaintiff was discharged on March 16, 2007 and was prescribed Alprazolm 1mg, Diazepam 10mg, Mirtazapine 30 mg, caffeine 100/ergotamine 1mg and Tamsulosin0.4 mg.  Several contained a warning that they could cause lightheadedness. (T. 121).

The Plaintiff did not allege depression as a factor for claiming disability but listed Vertigo, bradycardia, leukocytosis, hyperlipidemia and gerd (T. 105) when he filed in May 2007. He did not raise the issue of depression until a Disability Report filed July 27, 2007. (T. 138).

The fact that the plaintiff did not allege depression as a basis for his disability in his application for disability benefits can be significant, even if the evidence of depression was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001)

The Plaintiff was treated at the Ozark Guidance Center in September of 2008 (T. 372-373) and on October 13, 2008 Donald Defreece opined that the Plaintiff had Marked to Extreme limitations in most functions of daily activity.  He only had Moderate limitations in understanding, remembering and carrying out short, simple instructions. (T. 641-642). Mr. Defreece noted the Plaintiff's past medical assessments of Depression and Post Traumatic Stress

Disorder made by his VA treating doctors. (Id.). It is difficult to tell from the record exactly how many times the Plaintiff was seen by Mr. Defreece but it appears that it may only have been a single time.

A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 (internal quotations omitted).

The ALJ discounted the findings of both Mr. Williams and Mr. Defreece and found that the "claimant's mood disorder and any related limitations are not severe to a degree that would limit activities beyond the scope of the residual functional capacity" (T. 49).

The ALJ felt that the record showed that during this time, Plaintiff's alleged disabling affective disorder was capable of being well-controlled with medication. (Tr. 49). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001,

1006 (C.A.9 (Or.),2006).

On March 16, 2007, Dr. Lossing reported that Plaintiff was "alert and oriented," and "most pleasant and cooperative" (Tr. 288). On March 21, 2007, Dr. Perryman reported that Plaintiff's mood was normal (Tr. 271). On May 18, 2007, Dr. Perryman again noted that Plaintiff's mood was normal (Tr. 261).

On June 29, 2007, Plaintiff reported to Robert B. Stillwell, M.D., that he was sleeping better on Mirtazapine, but he had run out ten days earlier (Tr. 253). Dr. Stillwell noted that Plaintiff had "failed to report as requested after six weeks and so no notice was sent for six months" (Tr. 253). On examination, Dr. Stillwell found that Plaintiff appeared better, his affect was friendly, his mood was neutral, his sensorium was clear, and his memory was grossly intact. Plaintiff's thoughts were goal oriented with intact associations, and he demonstrated no evidence of delusions or hallucinations. Plaintiff denied suicidal or homicidal thoughts (Tr. 253). Plaintiff told Dr. Stillwell that he "never again" wanted antidepressants. Dr. Stillwell noted that Plaintiff had failed to report to psychotherapy, and he declined anger management classes (Tr. 254).

When Plaintiff underwent a surgery consult on August 23, 2007, for a hernia repair, Jeffrey D. Kellar, M.D., found Plaintiff to be awake, alert, and oriented times 4, with no anxiety or depression, and with good insight and judgment (Tr. 398).

On December 3, 2007, Plaintiff underwent a psychotherapy evaluation by Rita L. Officer, a clinical psychologist, at the request of Dr. Stillwell. Plaintiff reported to Dr. Officer that he wanted to get off some of his medications. On mental status examination, Plaintiff was alert and

However, the Plaintiff had a long history of Depressive Disorder. On December 5, 2005,

the Claimant was diagnosed by the VA Medical Center in Fayetteville, Arkansas with Depressive Disorder. (T.168). It appears the Plaintiff attempted suicide on May 31, 2006 (T. 340), he met with a VA Suicide Prevention Coordinator on September 26, 2007 (T. 577), called the VA Medical Center suicide line on October 23, 2007. After a further consultation at the VA Medical Center on October 30, 2007, it was remarked that the Claimant's "suicide ideation appears to be chronic." (T.564).

On February 13, 2008, the Claimant was admitted to the VA Medical Center for suicidal thoughts. (T.387). The Claimant was "admitted on a one-to-one due to his suicidal ideation, and considered an imminent risk." (T.388). It was noted that "over the last several weeks, [the Claimant] has had some intermittent suicidal thoughts secondary to his financial problems, marital problems, the separation between he and his wife." (T.387). His prognosis was guarded secondary to his personality disorder with antisocial and borderline features. (T.388).

On February 27, 2008, the Claimant presented at the VA Medical Center complaining of hallucinations. (T.370). The Claimant stated that he heard a rat talking to him and was convinced that the rat was real. (Id.). The Claimant also heard knives taunting him into self harm. (Id.).

February 28, 2008, the Claimant was assessed with a GAF of 28. (T.371). A GAF score of 28 indicates that the Claimant's behavior is considerably influenced by delusions or hallucinations. On April 28, 2008, the Claimant was again seen at the VA Medical Center. (T.420). The assessment of the Claimant on that date was of Major Depression, Recurrent – with paranoia. (Id.). This assessment was repeated on June 24, 2008. (T.410).

Evaluating mental impairments is often more complicated than evaluating physical impairments. *Obermeier v. Astrue*, Civil No. 07-3057, 2008 WL 4831712, at *3 (W.D.Ark. Nov.

3, 2008). With mental impairments, evidence of symptom-free periods does not mean a mental disorder has ceased. Id. Mental illness can be extremely difficult to predict, and periods of remission are usually of an uncertain duration, marked with the ever-pending threat of relapse. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001). Adding to these difficulties, individuals with chronic psychotic disorders often structure their lives in a way to minimize stress and reduce their signs and symptoms. Id. Given the sometimes competitive and stressful conditions in which people work, individuals with mental impairments "may be much more impaired for work than their signs and symptoms would indicate." *Id.; Obermeier*, 2008 WL 4831712, at *3. Worse yet, efforts to combat mental illness present their own unique difficulties. See Pate-Fires, 564 F.3d at 945. Individuals with mental illness often refuse to take their psychiatric medication-a symptom of the illness itself, rather than an example of willful noncompliance.

 The Plaintiff had been treated by Dr. Robert B. Stilwell, a psychiatrists, since his first assessment in 2005. He has never had a GAF score above 50 since May 31, 2006. (T. 159)

 A Global Assessment of Functioning (GAF) score is a doctor's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders Text Revision, 32-34 (4th ed.2000). A GAF below 50 is indicative of a severe impairment and "serious limitations in the patient's general ability to perform basic tasks of daily life." *Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir.2003).

 The Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," see 65 Fed.Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000). The GAF scores may still be used to assist the ALJ in assessing the level of a claimant's

functioning. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir.2002) ("While a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity], it is not essential to the RFC's accuracy."). *Halverson v. Astrue* 600 F.3d 922, 930 -931 (C.A.8 (Ark.),2010).

      A crucial issue in this case is the effect of the Plaintiff's depression on his ability to work. The ALJ obviously discounted the psychological RFC assessment by both Mr. Williams and Mr. Defreece and placed the Plaintiff's ability to function between the two assessments. The VA medical records are contradictory and in these circumstances, the ALJ should have requested that the Plaintiff's VA treatment team complete a PRTF and functional-capacity form to clarify how the Plaintiff's mental problems impacted his ability to work. *See Bowman v. Barnhart*, 310 F.3d 1080, 1082-85 (8th Cir.2002) (even if claimant is represented by counsel, ALJ has duty to develop facts fully and fairly; where long-term treating doctor's entries and opinion letter were somewhat cursory, ALJ was obligated to contact him for added evidence and clarification of claimant's RFC). *Van Winkle v. Barnhart,* 55 Fed.Appx. 784, 786, 2003 WL 124018, 2 (C.A.8 (Ark. (C.A.8 (Ark.),2003).

      Particularly in this instance when the Plaintiff's long term treating doctor was a psychiatrist. It is clear that the RFC assessment by a treating specialist may have had great weight with the ALJ. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.

      After reviewing the record, the court does not find this assessment to be entitled to

significant weight. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). Accordingly, on remand, the ALJ is also directed to request a mental RFC assessment from Plaintiff's treating psychiatrist Dr. Stilwell.

V.  **Conclusion:**

Accordingly, the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 31st day of January 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE